IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DEANN HUGHES                                                                                       PLAINTIFF

V.                                                                    CIVIL ACTION NO. 1:14-CV-109-SA-DAS

DYNCORP INTERNATIONAL, LLC                                                              DEFENDANT

MEMORANDUM OPINION

This matter comes before the Court on Defendant Dyncorp's Motion for Summary Judgment [53]. The Plaintiff filed the Complaint [1] in this case on June 24, 2014 alleging claims of race discrimination, sex discrimination, and retaliation against her former employer under Title VII of the Civil Rights Act of 1991, and violations of 42 U.S.C. Section 1981. Dyncorp now moves for summary judgment on all of the Plaintiff's claims, the Plaintiff responded [62] and the Defendant replied [64], making this motion ripe for review.

*Factual background*

Deann Hughes, a black female, began work as a supply technician in August of 2006 with L-3. At that time, L-3 held a contract with the Columbus Air Force Base to supply maintenance support and aircraft components to T-6 aircraft at the base.[1] Fred Duncan, a black male, was the site supervisor[2] at that time, and Hughes' direct superior. In March of 2007, L-3 promoted Duncan to site manager when his boss left. The site manager is the top position on site. At that same time, L-3 promoted Hughes, on Duncan's recommendation, to his now vacant

---

[1] The T-6 is a propeller driven airplane used in pilot training.
[2] Dyncorp and L-3 used different titles for the same employee positions. To avoid confusion the Court will use "site supervisor" to refer to the positions of both "site foreman" under L-3 *and* "site supervisor" under Dyncorp. There is no difference in chain of command or responsibilities between the job titles. Hourly employees report to the site supervisor. The site supervisor reports to the site manager.

position of site supervisor. As site supervisor, Hughes was responsible for managing eight hourly employees on three overlapping shifts.

Sometime in 2010, Hughes talked to Duncan about her interest in pursuing a bachelor's degree in mechanical engineering. After conferring with his superiors, Duncan agreed to work with Hughes to accommodate her class schedule. Hughes enrolled at the University of Alabama in 2011. During school, Hughes typically worked from 5:00 am until 9:00 am, then traveled to Tuscaloosa for class, returning to work around 1:00 or 2:00 pm and working until 7:00 or 8:00 pm.

Dyncorp took over L-3's contract at the Columbus Air Force Base in June of 2012.[3] The L-3 employees were required to fill out employment applications with Dyncorp. According to Hughes, she talked with Russ Fatum, Dyncorp's vice president of human resources about continuing her schooling after the Dyncorp takeover. Dyncorp hired Duncan and Hughes in the same positions they held with L-3. In July of 2012, Duncan asked Hughes to postpone her fall semester of classes to help with the transition from L-3 to Dyncorp. According to Hughes, she met with Duncan and his superiors, Jeffery Roth (Program Director), and Ron Williams (Deputy Program Director), to discuss her schooling, and they all agreed that she should postpone her classes for the coming fall semester until the spring of 2013. Hughes did not enroll in classes for the fall semester of 2012.

On November 13, 2012, Roth suspended Duncan and Hughes for four days for a variety of issues mostly related to housekeeping at the site, inventory mismanagement, and improper storage of parts and equipment. According to Hughes and Duncan, the issues outlined in the suspension were mostly related to the L-3 to Dyncorp transition and were resolved far in advance of the suspension. After receiving notice of the suspension, Duncan resigned. Duncan

---

[3] Dyncorp's T-6 Program is operated at ten sites across the country.

recommended Hughes as his replacement. Before Duncan could be replaced, Hughes assumed the majority of Duncan's duties while retaining her own responsibilities as site supervisor. In December of 2012, Worldwide Recruiting Services, a subsidiary of Dyncorp, posted the site manager job opening, and Hughes applied online.

Prior to Duncan's departure from Dyncorp, he and Hughes discussed her return to school for the spring semester. Duncan indicated to her that he would make every effort to accommodate her class schedule. After Duncan's departure, Hughes talked with her superior, Greg Harmon (Operations Manager) about her return to school. Hughes and Harmon exchanged emails about the specifics of her schedule and what hours she would be available to work. At this point Hughes had already registered for classes scheduled to begin on January 7, 2013. Harmon had at least some discussion of Hughes' return to school with Williams and Roth. After speaking with Hughes on the phone on January 2, 2013, Harmon emailed Hughes and asked her to postpone her classes for a second semester.

On January 4, 2013, Hughes learned that Dyncorp offered the site manager position to another candidate. On January 9, 2013, Hughes emailed Roth disputing the reasons for her November suspension and advising him directly of her class schedule. According to Hughes, her plans to return to school for the spring semester were consistent with her previous agreement with Dyncorp management. The following day, Roth called Hughes and told her that he could not accommodate her request to return to school. Roth also informed Hughes that she was expected to be at work during normal working hours, specifically, 7:00 am to 4:00 pm, or 8:00 am to 5:00 pm.

After her conversation with Roth, Hughes called Dyncorp's ethics hotline and filed a complaint alleging race and sex discrimination by Roth. Russ Fatum, Dyncorp's vice president of human resources had access to Hughes' hotline complaint.

On the morning of January 11, 2013, Hughes attended her classes at the University of Alabama. Roth suspended Hughes for three days for absenteeism, misuse of time, and insubordination. Hughes' suspension ended on January 16, 2013, and Hughes returned to work after attending her morning classes. That same day, Roth terminated Hughes for a violation of Dyncorp standards and conditions of employment. Fatum approved Roth's decision to terminate Hughes.

In her complaint, Hughes alleges that she was not hired or promoted to the position of site supervisor because she is a black female. Hughes also alleges that she was terminated because she is a black female. Finally, Hughes alleges that she was suspended and fired in retaliation for making a complaint about race and gender discrimination.

Dyncorp filed a motion for summary judgment alleging that Hughes has failed to meet her evidentiary burden on all of her claims.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

4

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Race and Sex Discrimination: Failure to Promote*

To succeed on a claim for intentional discrimination under Title VII, Plaintiff must first prove a *prima facie* case of discrimination either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)). In the instant case, Hughes has not provided any statements or other direct

5

evidence of discrimination, nor does she point to any in her pleadings, that indicates prohibited hostility proving her case of discrimination without "inference or presumption." *Id.*

Absent direct evidence, to establish a *prima facie* case of discrimination by failing to promote her under Title VII, a plaintiff is required to show: (1) she was not promoted; (2) she was qualified for the position she sought; (3) she fell within a protected class at the time of the failure to promote; and (4) the defendant gave the promotion to someone outside of that protected class. *Gregory v. Town of Verona, Miss.*, 574 F. App'x 525, 528 (5th Cir. 2014) (citing *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013)).

If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

*Prima Facie Case*

Hughes has established a *prima facie* case of race and sex discrimination relative to her failure to promote claim. First, Hughes was not promoted to site manager.[4] Second, Hughes was qualified to be site manager. The record is clear that after Duncan's resignation, Hughes was operating in that role, as well as the role of site supervisor, and it is undisputed that she was effective in both roles. Third, as a black female Hughes is a member of a protected class. Finally, Dyncorp ultimately hired a white male, David Ems, as site manager.

*Legitimate Non-Discriminatory Reason*

Dyncorp advances two arguments to support its legitimate non-discriminatory reason for not promoting Hughes. First, Dyncorp argues that Hughes was fired before the promotion decision was made. As stated above, this argument goes to the establishment of the first prong of Hughes' *prima facie* case. With factual controversies resolved in the Plaintiff's favor, this is not a legitimate, non-discriminatory reason for failing to promote Hughes. *See Little*, 37 F.3d at 1075.

Second, Dyncorp argues that Hughes was not qualified to be site manager for the same reasons she was suspended and fired: absenteeism, misuse of time, and insubordination. Again, there are factual controversies in the record as to the timing of the promotion denial, i.e. whether the promotion was denied before the alleged issues giving rise to the suspension and termination arose. Resolving these controversies in Hughes' favor, the actions giving rise to Hughes' suspension and termination could have occurred *after* she was denied the promotion. *Id*. The record also demonstrates that Hughes was effectively performing the duties of site manager up

---

[4] There is conflicting evidence in the record as to whether Dyncorp conclusively denied Hughes the promotion before she was suspended and terminated. Bearing in mind that factual controversies are to be resolved in favor of the non-movant, "when . . . both parties have submitted evidence of contradictory facts," the Court finds that this prong of her *prima facie* case is satisfied for summary judgment purposes. *Little*, 37 F.3d at 1075.

7

until the time of her January suspension. It is Dyncorp's burden to articulate a legitimate non-discriminatory reason for not promoting Hughes, and it has failed to do so in regards to Hughes' failure to promote claim. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Burdine*, 450 U.S.at 254–56, 101 S. Ct. 1089.[5]

*Pretext*

Even if Dyncorp had advanced a legitimate non-discriminatory reason for failing to promote Hughes, she has pointed to additional evidence that would support a finding of pretext. Hughes was the only black female managerial employee in all of the ten sites in the T-6 project. Only one other site had a female managerial employee. Additionally, Duncan and Hughes were the only managerial employees to be suspended by Dyncorp. Hughes had five years of managerial experience in the T-6 program, she served as interim site supervisor after Duncan's departure, and she received positive feedback from her superiors during her tenure as interim site manager. According to Hughes and Duncan, Dyncorp had a common practice of routinely promoting site supervisors to vacant site manager position. Notably, Harmon, Hughes' immediate superior told Hughes that she was doing a good job as interim site manager and that he would back her application.

*Conclusion: Failure to Promote*

Viewing the evidence as a whole, and resolving factual controversies in favor of the Plaintiff, the Court finds that Dyncorp has failed to meet its burden of articulating a legitimate non-discriminatory reason for failing to promote Hughes. *Little*, 37 F.3d at 1075. Dyncorp's

---

[5] Dyncorp advances a third legitimate non-discriminatory reason argument: That Dyncorp did not know Hughes had applied for the site manager position because Worldwide Recruiting Services did not tell it she had applied. Based on uncontroverted evidence in the record, the Court finds this argument wholly unworthy of credence. The record demonstrates that Worldwide is a wholly owned subsidiary of Dyncorp, and that Dyncorp management had actual knowledge of Hughes' interest and application for the position.

8

motion for summary judgment on Plaintiff's claims of race and sex discrimination relative to its failure to promote Hughes is denied.

*Race and Sex Discrimination: Termination*

*Prima Facie Case*

In order to establish a *prima facie* case relative to termination, a plaintiff is required to show: (1) she is a member of a protected class; (2) she was qualified; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817; *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *St. Mary's*, 509 U.S. at 509, 113 S. Ct. 2742. Hughes has established a *prima facie* case of race discrimination relative to her termination. Hughes is a black female, she was qualified for her position, she was terminated, and she was replaced by a white female. Hughes has not established a *prima facie* case of sex discrimination relative to her termination because Dyncorp replaced her with a female.

*Legitimate Non-Discriminatory Reason*

Because Hughes has established a *prima facie* case relative to her race claim, the burden shifts to Dyncorp to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Burdine*, 450 U.S. at 254–56, 101 S. Ct. 1089. According to Dyncorp, the only reason it terminated Hughes was for insubordination and unexcused absences that resulted from attending her classes instead of appearing at work as instructed.

Because Dyncorp has advanced a legitimate non-discriminatory reason for firing Hughes, the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's

9

protected characteristic, her race. *Alvarado*, 492 F.3d at 611 (5th Cir. 2007) (citing *Rachid*, 376 F.3d at 312).

   *Pretext and Motivating Factor*

"A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [her employer's] explanation is unworthy of credence." *Rutland-Simpson v. Eli Lilly & Co.*, 575 F. App'x 314, 318 (5th Cir. 2014) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). The pretext inquiry does not ask whether the employer's reason for the firing was incorrect, but whether the given reason is the real reason; whether the evidence supports an inference that [Dyncorp] intentionally discriminated against [Hughes], an inference that can be drawn if the given reason was not the real reason for discharge. *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).

The United States Supreme Court has held that a "plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race . . . was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). In other words, Hughes can survive summary judgment by demonstrating that her race or sex was a "motivating factor . . . even though other factors also motivated the practice." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (citing 42 U.S.C. § 2000e–2(m)). "Direct evidence of the 'motivating factor' is not needed to shift the burden of proof to the employer to affirmatively show that it would have treated the plaintiff the same in the absence of the unlawful motivating factor; circumstantial evidence of the motivating factor can be enough." *Id*.

10

Hughes asserts the following as evidence that Dyncorp's given reason for firing her is unworthy of credence: Hughes was the only black female managerial employee in all of the ten sites in the T-6 project. Duncan and Hughes were the only black managerial employees in the T-6 program, and the only ones suspended at any site during Roth's tenure as program director. Only one other site had a female managerial employee. Dyncorp replaced Hughes as site supervisor with a white female.

Hughes also argues that she was the only managerial employee given a strict schedule even though she was previously able to set her own hours, and often worked as many as fifteen hours in a day. According to Hughes, she had more than six years of experience in the T-6 program, and was an outstanding employee with the November suspension as the only blemish on her record. Hughes alleges that she performed well as interim site manager, and her school schedule actually provided more managerial coverage over a broader range of hours. Hughes further argues that she postponed her fall semester of school and was assured that Dyncorp would make every effort to accommodate her spring semester. Hughes also argues that she was no longer needed for morning meetings with Air Force personnel because she was not attending those meetings anyway, and a new site manager had already been selected. Finally, Hughes alleges that Dyncorp could have accommodated her school schedule, and resolved the conflict, by simply changing her from salaried to hourly but it never gave her that option before firing her.

Bearing in mind that at the summary judgement stage, the Court must resolve factual controversies in Hughes' favor, and may "not make credibility determinations or weigh the evidence" the Court finds that the circumstantial evidence presented by Hughes, and the conflicting versions of the events leading up to her termination create numerous questions of fact relative to this claim. *Little*, 37 F.3d at 1075; *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097. In

addition, a plaintiff may use statistical evidence in a disparate treatment case "to show that an employer's justification for a discriminatory act is pretext." *Hollins v. Premier Ford Lincoln Mercury, Inc.*, 766 F. Supp. 2d 736, 752 (N.D. Miss. 2011) (citing *Plemer v. Parsons–Gilbane*, 713 F.2d 1127, 1137 (5th Cir. 1983)). The Supreme Court has made clear that "[t]he probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Id*. (citing *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 340, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)).

The race statistics argued by Hughes are probative when considered in tandem with Plaintiff's other evidence of alleged discrimination. Hughes established a *prima facie* case of race discrimination relative to her termination, a point that Dyncorp concedes for summary judgment purposes. Hughes has presented statistical and other circumstantial evidence that race may have been a motivating factor in her termination. When coupled with the other allegations of discrimination alleged in this case, the Court finds that a reasonable jury could conclude that race was a motivating factor in Dyncorp's decision to fire Hughes, and that Dyncorp's articulated reason for firing her is "unworthy of credence." *Rutland*, 575 F. App'x at 318 (citing *Wallace*, 271 F.3d at 220). Finally, Dyncorp did not argue, and has therefore failed to affirmatively demonstrate, that it "would have treated the plaintiff the same in the absence of the unlawful motivating factor." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (quoting *Desert Palace*, 539 U.S. at 101, 123 S. Ct. 2148).

Because the Plaintiff has created factual disputes as to both the credibility of Dyncorp's articulated reason for its actions, and whether race was a motivating factor in its decision to terminate her, Dyncorp's motion for summary judgment on Hughes' claim of race discrimination

relative to her termination is denied. Dyncorp's motion for summary judgment on Hughes' claim of sex discrimination relative to her termination is granted.

*Retaliation*

*Prima Facie Case*

A plaintiff establishes a *prima facie* case of retaliation by showing that she engaged in a protected activity, an adverse employment action occurred, and there was a causal link between the protected activity and the adverse employment action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

In the instant case, it is undisputed that Hughes has established the first two elements of her *prima facie* case. Hughes filed a hotline complaint of race and sex discrimination against Roth, she returned to work and then, within days, she was suspended and then terminated. The *prima facie* case analysis turns on the third element, the causal connection between the protected activity and the termination.

According to Dyncorp, Roth had no knowledge of Hughes' ethics hotline complaint against him when he made the decisions to suspend and terminate her. Hughes alleges that even if Roth was not aware of the complaint, Russ Fatum had access to the complaint and was aware of it when he approved Hughes' suspension and termination. It is undisputed that Fatum approved both the suspension and the termination, and that Fatum had access to hotline complaints in his role as vice president of human resources.

Temporal proximity between protected activity and alleged retaliation is evidence of a causal connection. "[T]he protected act and the adverse employment action [must be] 'very close' in time" to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth.*

*Bd. of Comm'rs*, No. 14-31090, 2015 WL 7273321, at *6 (5th Cir. Nov. 17, 2015) (citing *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007)). In the instant case, the one-day gap between the hotline complaint and the suspension, and the six-day gap between the hotline complaint and the termination weigh in favor of establishing a causal connection.

A factual controversy exists as to whether Roth and Fatum actually knew about Hughes' hotline complaint at the time they made the decisions to suspend and fire her. Factual controversies must be resolved in the Plaintiff's favor at the summary judgment stage. *Little*, 37 F.3d at 1075. In light of Hughes' evidence of Roth and Fatum's access to her complaint, and the short time between Hughes' complaint and her suspension and termination, the Court finds that Hughes has established a *prima facie* case of retaliation.

*Legitimate Non-Retaliatory Reason*

If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Hernandez*, 670 F.3d at 657 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996).

Again, Dyncorp alleges that their sole reason for suspending and firing Hughes is that she attended her classes instead of appearing for work as instructed.

*Pretext*

If the defendant carries the burden of production by articulating a legitimate non-retaliatory reason for the adverse action, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for a real discriminatory or retaliatory purpose." *Vargas v. McHugh*, No. 15-50544, 2015 WL 6774016, at *3 (5th Cir. Nov. 3, 2015) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).

The Supreme Court recently held that the motivating-factor standard from Title VII discrimination claims does not apply to retaliation claims. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013). Instead, plaintiffs asserting retaliation claims must meet the higher standard of but-for causation. In order to show that the employer's reason is actually a pretext for retaliation, the applicant must show "that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Vargas*, 2015 WL 6774016, at *3 (citing *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Nassar*, 133 S. Ct. at 2528, 186 L. Ed. 2d 503)). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

In support of her argument that Dyncorp's given reason for suspending and firing her is pre-textual, Hughes again points to the alleged connection between her complaint, Fatum, Roth, and the decisions to suspend and fire her. Hughes argues that a reasonable jury could conclude that Fatum approved Hughes' suspension and termination because she filed a complaint.

Hughes has established a *prima facie* case of retaliation. Based on the evidence in the record at this time, a reasonable jury could infer that Hughes' complaint against Roth was the but-for cause of her suspension a nd termination. Significant questions of fact remain as to whether Roth and Fatum knew about the complaint at the time they made the decisions to suspend and fire Hughes, and whether Dyncorp's given reason for suspending and firing Hughes is pretextual. The Court finds that these are questions best suited for a jury. *See Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015) (holding that issue of whether plaintiff's protected activities were but-for cause in retaliation case was for jury).

For these reasons, Dyncorps motion for summary judgment as to Hughes' retaliation claim is denied.

*Conclusion*

For the reasons specifically outlined above the Court finds the following:

Dyncorp's motion for summary judgment on Hughes' claim for race discrimination relative to her failure to promote claim is DENIED.

Dyncorp's motion for summary judgment on Hughes' claim for sex discrimination relative to her failure to promote claim is DENIED.

Dyncorp's motion for summary judgment on Hughes' claim for race discrimination relative to her termination claim is DENIED.

Dyncorp's motion for summary judgment on Hughes' claim for sex discrimination relative to her termination claim is GRANTED.

Dyncorp's motion for summary judgment on Hughes' claim for retaliation is DENIED.

SO ORDERED this the 5th day of August, 2016.

                                                 /s/ Sharion Aycock
                                               UNITED STATES DISTRICT JUDGE